**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joyce Garrett, | No. CV-17-08085-PCT-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Johnnye L Woodle, et al., | |
| Defendants. | |

Defendants Johnnye L. Woodle, Lloyd H. Woodle, and Specialized Services Transportation, Inc. have filed a motion for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.[1] (Docs. 62, 63.) Defendants argue that they are entitled to summary judgment as a matter of law on Plaintiff Joyce Garrett's damages claims for (1) past or future medical treatment provided, or to be provided, after February 1, 2016, and (2) wage loss or future wage loss and loss of earning capacity resulting from Plaintiff's early retirement in August 2017. (Doc. 62 at 1.) Defendants assert that they are entitled to summary judgment because Plaintiff has not disclosed any expert opinion evidence to establish that these damages were caused by Defendants' alleged negligence. (*Id.*) The motion is fully briefed. (Docs. 65, 66.) As set forth below, the Court grants the motion, in part.

---

[1] Defendants filed a separate "notice of errata" requesting oral argument on the motion. (Doc. 67.) The Court denies Defendants' request for oral argument because the issues have been briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

## I. Background

This matter arises from a May 13, 2015 collision involving two tractor-trailers traveling westbound on Interstate 40 in Mohave County, Arizona.[2] (DSOF ¶ 5.)[3] At the time of the accident, Plaintiff was a passenger in a tractor-trailer that was struck from behind by another tractor-trailer that Defendant Johnnye L. Woodle ("Woodle") was driving and that Defendant Specialized Services Transportation, Inc. ("SST") owned. (*Id.* at ¶ 6, Doc. 1 at ¶ 10.) Plaintiff was a self-employed commercial truck driver working as a team with her husband. (DSOF ¶ 5.) Plaintiff alleges that Woodle was negligent in causing the accident by failing to control her speed to avoid a collision, and by causing a collision with the tractor-trailer in which Plaintiff was a passenger. (Doc. 1 at ¶ 11.) Plaintiff claims that her neck, back, and shoulders were injured in the accident. (DSOF ¶ 8.)

### A. Plaintiff's Claims

Plaintiff alleges the following claims: (1) negligence against Woodle (Count One); (2) negligence *per se* against Woodle based on the breach of her statutory duty to control her speed and avoid a collision, Ariz. Rev. Stat. § 28-701(A) (Count Two); (3) negligent entrustment against SST, owner of the tractor-trailer that Woodle was driving (Count Three); and (4) *respondeat superior* liability against SST for Woodle's negligence (Count Four). (Doc. 1 at ¶¶ 14-30.) Plaintiff alleges that "as a proximate result of the negligence, carelessness, and recklessness of the Defendant [Woodle], Plaintiff sustained severe personal injuries." (*Id.* at ¶ 12.)

### B. Plaintiff's Medical Treatment and Lost Wage Claims

Defendants state that Plaintiff seeks to recover damages for (1) past and future medical treatment that she allegedly incurred, or will incur, as a result of this accident, and (2) four years of lost wages and lost earning capacity resulting from her early

---

[2] The parties agree that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. (Doc. 19 at 3.)

[3] Citations to "DSOF" are to Defendants' Separate Statement of Facts in Support of Motion for Partial Summary Judgment. (Doc. 63.)

retirement allegedly caused by her pain from the injuries suffered in the accident. (DSOF ¶¶ 7-8.) A few days after the accident, on May 15, 2015, Plaintiff began seeking medical treatment with various providers. (DSOF ¶ 9.) On February 1, 2016, Plaintiff had an appointment with Dr. Haynes. (*Id*.) Dr. Haynes told Plaintiff her pain "was all in [her] head." (DSOF ¶ 10.) Following the February 1, 2016 visit with Dr. Haynes, Plaintiff did not seek medical treatment until October 7, 2016. (DSOF ¶ 11.) During that eight month gap in treatment, Plaintiff had a screening examination with the U.S. Department of Transportation on June 8, 2016. (DSOF ¶ 12.) During that examination, Plaintiff reported that she was not experiencing any "neck or back problems." (*Id*.)

Plaintiff resumed treatment on October 7, 2016 with Dr. Scott Campbell, her current pain management physician. (DSOF ¶ 13). During his deposition in this case, Dr. Campbell confirmed that he has not provided, and has not been asked to provide, any opinions concerning (1) whether Plaintiff's condition is permanent, (2) the duration of Plaintiff's condition, (3) Plaintiff's ability to return to work based on her condition, or (4) the future treatment Plaintiff will need. (DSOF ¶ 14.) Dr. Campbell confirmed that a person does not have to suffer trauma, such as a car accident, to have neck pain and to require the treatment he provided to Plaintiff. (DSOF ¶ 15.) Dr. Campbell's May 26, 2017 treatment note states that Plaintiff "was diagnosed with fibromyalgia and lupus recently and is followed by a specialist." (DSOF ¶ 16.) During his deposition, Dr. Campbell stated that pain management treatment is "pretty common" for people diagnosed with fibromyalgia. (DSOF ¶ 17.)

Plaintiff also seeks four years of lost wages, including future lost wages, because she claims her injuries forced her to retire early.[4] (DSOF ¶ 18.) Specifically, Plaintiff asserts that she "could no longer drive [a tractor-trailer] due to her pain. Plaintiff's ability to work has been cut short by this accident." (*Id*.) Plaintiff does not dispute that three months after the accident, in the middle of August 2015, she resumed working with her

---

[4] Defendants characterize Plaintiff's request for damages in this manner, the Complaint does not specifically seek this category of damages. (*See* Doc. 1.)

- 3 -

1 husband as a truck driving team, and continued to work as a truck driver until August 2017. (DSOF ¶ 19.)

## II. Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on the mere allegations in the pleadings, but must set forth by affidavit, or other appropriate evidence, specific facts showing there is a genuine issue for trial. *Id.* at 249. The nonmoving party must produce at least some "significant probative evidence tending to support" its position. *Smolen v. Deloitte, Haskins, & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

The issue is not whether the "'evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented.'" *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). The Court considers the motion for partial summary judgment under this standard.

### III. Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment on Plaintiff's claims for damages for certain past and future medical treatment, and for wage loss and loss of earning capacity based on her early retirement. (Doc. 62 at 1.) Defendants assert that they are entitled to summary judgment because Plaintiff has not disclosed any expert opinion evidence to establish that the accident caused these damages. (*Id*. at 2.) In response, Plaintiff asserts that she properly disclosed expert opinions from her treating physicians and complied with Rule 26(a)(2)(C). (Doc. 65 at 3.) As set forth below, the Court finds that Plaintiff did not properly disclose expert opinions from her treating physicians.[5]

#### A. Disclosure Requirements

In the Case Management Order ("CMO"), the Court set deadlines for the parties to exchange "full and complete expert disclosures as required by Rule 26(a)(2)(A)-(E)" of the Federal Rules of Civil Procedure. (Doc. 25 at 3.) The CMO stated that "[d]isclosures under Rule 26(a)(2)(A) must include the identities of treating physicians and other witnesses who will provide testimony under Rules 702, 703, or 705 of the Federal Rules of Evidence, but who are not required to provide expert reports under Rule 26(a)(2)(B)." (*Id*.) The CMO explained that "Rule 26(a)(2)(C) disclosures are required for such witnesses." (*Id*.) The CMO specified that "Rule 26(a)(2)(C) disclosures must identify not only the subjects on which the witnesses will testify, but must also provide a summary of the facts and opinions to which the expert will testify. The summary, although not as detailed as a Rule 26(a)(2)(B) report, must be sufficiently detailed to provide fair notice of what the expert will say." (*Id*.)

---

[5] Plaintiff did not file a separate, contravening statement of facts in support of her response to the motion for summary judgment, as Local Rule 56.1(b) requires. Thus, the Court can deem Defendants' statement of facts "undisputed" for purposes of the motion for summary judgment. Because Plaintiff is represented by counsel and does not provide any reason for her failure to file a separate statement of facts, the Court will consider the Defendants' statement of facts undisputed. *See Szaley v. Pima Cty.*, 371 F. App'x. 734, 735 (9th Cir. 2010) (holding that district court "properly deemed defendant's statement of facts to be true because plaintiff failed to comply with Local Rule 56.1(b)"); *see Taylor v. AFS Techs., Inc.*, 2011 WL 1237609, at *6 (D. Ariz. Apr. 4, 2011) (stating that the court relies on "the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In *Goodman v. Staples the Office Superstore LLC*, 644 F.3d 817, 826 (9th Cir. 2011), the Ninth Circuit explained that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." Therefore, the CMO noted that "for opinions formed outside the course of treatment, Rule 26(a)(2)(B) written reports are required." (Doc. 25 at 4 n.3.) The CMO further stated that "[f]or opinions formed during the course of treatment, Rule 26(a)(2)(C) disclosures will suffice." (*Id*.)

As set forth in the CMO, and explained in Ninth Circuit precedent, Plaintiff was required to disclose a written report under Rule 26(a)(2)(B) from any treating physician testifying to opinions formed outside the course of Plaintiff's treatment. For a treating physician offering opinions formed during the course of Plaintiff's treatment, Plaintiff was required to disclose a Rule 26(a)(2)(C) summary of the treating physician's opinions and the facts to which the treating physician was expected to testify.

### B. Plaintiff Did Not Comply with Rule 26(a)(2)(C)

Plaintiff asserts that she complied with Rule 26(a)(2)(C) by disclosing the "subject matter and a summary of facts and opinions" to which her "non-retained treating physicians" were expected to testify. (Doc. 65 at 2.) Plaintiff states that she disclosed her medical providers and their records to Defendants as part of her "mandatory disclosure." (Doc. 65 at 3; Exs. A-1 and A-2.) Plaintiff asserts that she complied with Rule 26(a)(2)(C) because her disclosures stated that:

> The above healthcare providers are expected to testify in accordance with their medical records submitted herewith; including without limitation, Plaintiff's diagnosis, symptoms, prognosis, course of medical treatment; the nature, extent and permanency of Plaintiff's injuries; causation; the amount and reasonableness of medical charges; and the medical necessity of Plaintiff's treatment.

(Doc. 65 at 3.) Plaintiff asserts that Defendants had adequate notice of her treating physicians' testimony on the issue of causation because their treatment records make it "evident" that they were "treating Plaintiff for symptoms and complaints that arose from the May 13, 2015 accident, the subject of this litigation." (*Id*. at 4; Exs. A-1, A-2.)

In their reply, Defendants assert that Plaintiff's disclosure statements did not comply with Rule 26. (Doc. 66 at 4.) To support their argument, Defendants cite *Cooke v. Town of Colorado City*, 2013 WL 551508 (D. Ariz. Feb. 13, 2013). (Doc. 66 at 4.) In that case, the court considered a motion to strike the testimony of the plaintiff's treating physician for failure to comply with Rule 26(a)(2)(C). *Cooke*, 2013 WL 551508 at *4. Similar to this case, in *Cooke*, plaintiff's expert disclosure stated that each medical witness would testify

> concerning the medical condition of Plaintiff Ronald Cooke, their diagnoses, the physical limitations on Mr. Cooke, the facts establishing and the extent of his disabilities, and his needs for electricity and clean water, his need for accessible housing, including an accessible shower, and the limitations on his physical activity due to his disabilities.

*Id*. The court found that the disclosure statement violated Rule 26(a)(2)(C). *Id*. The court explained that the disclosure "advise[d] the reader that the witnesses will have opinions in certain areas, but fail[ed] to state *what the opinions are*, and the factual basis for those opinions." *Id*. (emphasis in original). The court further stated that by referring to several witnesses in the same statement, the disclosure could mean that the witnesses would offer different opinions about plaintiff's needs. *Id*. The court concluded that "[n]ot only do the disclosures say nothing about the opinions to which the witnesses intend to testify, but they do not even attempt to state facts supporting the opinions." *Id*. Therefore, the disclosures violated Rule 26(a)(2)(C) and plaintiff could not use the witness's testimony in support of a summary judgment motion or at trial, unless plaintiff showed that the inadequate disclosure was harmless or substantially justified. *Id*. (citing Fed. R. Civ. P. 37(c)(1)). The court found that plaintiff had not made that showing. *Id*. at *5.

Similar to the disclosure statement in *Cooke*, Plaintiff's disclosure statements refers to several "healthcare providers." (Doc. 65 at 3.) The disclosure statements indicate that the healthcare providers will have opinions in certain areas, including Plaintiff's injuries and the causation of those injuries, but do not state what the opinions

are, and do not identify the factual basis for those opinions. (*Id*.) The disclosure statements do not provide a "summary of the facts and opinions" to which each healthcare provider is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C). Thus, Plaintiff's disclosure statements do not comply with Rule 26(a)(2)(C).

### C. Sanctions for Failing to Disclose Expert Opinions

Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Thus, Rule 37 "gives teeth to [Rule 26(a)'s] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001).

Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Id*. (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). Rule 37(c)(1), however, allows the use of information or witnesses that were not timely disclosed if the failure to disclose was substantially justified or harmless, but places "the burden [] on the party facing sanctions to prove harmlessness." *Id*. at 1107 (citing *Wilson v. Bradlees of New England, Inc*., 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless . . . .")).

In her response to the motion for summary judgment, Plaintiff argues that her disclosures were sufficient and, thus, she does not argue that any insufficient disclosure was substantially justified. (Doc. 65.) Plaintiff suggests, however, that any asserted deficiencies in her disclosures were harmless because Defendants failed to request any supplemental disclosure or clarification. (*Id*. at 4.) This argument fails because Plaintiff had disclosure obligations under Rule 26 and the CMO, even in the absence of a discovery request from Defendants.

Defendants assert that Plaintiff cannot introduce expert medical opinions on causation because she did not provide any summary of the facts and opinions of her treating physicians. (Doc. 62 at 5, 7.) Although Plaintiff did not disclose opinion testimony from any of her treating physicians, Defendants do not seek summary judgment on Plaintiff's claims for medical treatment before February 1, 2016. Instead, Defendant argues that Plaintiff "has no expert opinion that any of her medical care from October 7, 2016 to the present is casually related to the accident." (*Id.* at 7.) Defendants further assert that Plaintiff does not have any expert opinion evidence that the injuries from the accident were the cause of the pain that allegedly forced her to retire in August 2017. (*Id.*)

The Court agrees with Defendants' assertion that Plaintiff's disclosures related to her "healthcare providers" did not comply with Rule 26(a)(2)(C). Therefore, Plaintiff is precluded from offering opinion testimony from those providers, including opinions formed during the course of treatment, if those opinions are not recorded in the medical records. However, Plaintiff may testify about her injuries, her pain and suffering, and the medical treatment she received. Plaintiff's treating physicians may testify about their treatment of Plaintiff, as disclosed in their medical records.

### D.  Standards to Establish Negligence Under Arizona Law

Plaintiff asserts negligence claims against Defendants for the injuries she allegedly sustained as a result of the 2015 accident. (Doc. 1.) To prevail on a negligence claim, Plaintiff must prove: (1) a duty on the part of the defendant to exercise reasonable care, (2) a breach of that duty, (3) a causal connection between the negligent conduct and the resulting injury, and (4) actual damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The existence of a duty is generally a question of law, while the other three elements are factual issues "generally within the province of the jury." *Ritchie v. Krasner*, 211 P.3d 1272, 1279 (Ariz. Ct. App. 2009) (citing *Gipson*, 150 P.3d at 230); *see Ball v. Prentice*, 781 P.2d 628, 630 (Ariz. Ct. App. 1989) (the "nature, severity and extent of [a plaintiff's] injuries and whether they are supported by medical or other expert

witnesses is a question for the trier of fact."); *Smith v. Chapman*, 564 P.2d 900, 903 (Ariz. 1977) (en banc) (stating that whether an accident is "the proximate cause of the injury or damages is, generally, a question for the jury.").

To establish causation under Arizona law, the plaintiff "must show some reasonable connection between defendant's act or omission and plaintiff's damages or injuries." *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (en banc). "The defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." *Id.* (quoting *Ontiveros v. Borak*, 667 P.2d 200, 205 (Ariz. 1983)).

Defendants argue that Plaintiff "cannot recover any damages for past or future medical treatment provided or to be provided after February 1, 2016," and that Plaintiff "cannot recover any damages for her claim of wage loss/future wage loss and/or loss of earning capacity due to her 'early' retirement in August 2017." (Doc. 62 at 1.) Defendants assert that Plaintiff has not offered any expert opinion evidence to establish that the 2015 accident caused these damages. Nonetheless, they do not move for summary judgment on Plaintiff's negligence claims in their entirety, and they do not argue that the accident did not the cause any of Plaintiff's alleged injuries. Therefore, it appears that Defendants are arguing that Plaintiff cannot establish whether her injuries are permanent or whether she will require future treatment. (Doc. 62 at 8.)

### 1. Past or Future Medical Treatment

Defendants state that the only evidence that Plaintiff disclosed for medical treatment after February 1, 2016 is a record from an appointment with Dr. Campbell on October 7, 2016. (Doc. 62 at 8.) Defendants assert that Dr. Campbell has stated that he has not and will not provide an opinion that connects his treatment of Plaintiff to the 2015 accident. (DSOF ¶¶ 4, 14.) Defendants also assert that Dr. Campbell stated that Plaintiff was diagnosed with lupus and fibromyalgia and that pain management treatment is "common for those conditions." (*Id.* at ¶¶ 15-17.)

Plaintiff does not dispute that she had an eight-month gap in treatment from February 1, 2016 to October 7, 2016. (Doc. 65.) Plaintiff also does not dispute that the only evidence she has disclosed for medical treatment after February 1, 2016 is her treatment with Dr. Scott Campbell, beginning on October 7, 2016. (*Id*.) Defendants assert that, based on his deposition testimony, Dr. Campbell "has not and will not provide any opinions relating the treatment he is providing to Plaintiff to the accident." (Doc. 62 at 8; DSOF ¶¶4, 14.) Plaintiff states that "[n]ot being asked to develop an opinion is separate and distinct from arriving at an opinion on causation through the care and treatment of the patient," and suggests Dr. Beale and Dr. Campbell may have opinions on causation based on their care and treatment of Plaintiff. (Doc. 65 at 4.) Plaintiff, however, has not disclosed any opinion evidence from any healthcare providers, including Dr. Beale and Dr. Campbell. (Doc. 65.)

Defendants assert that Plaintiff cannot prove that Dr. Campbell's treatment is related to her injuries from the accident rather than related to her fibromyalgia and lupus. (Doc. 62 at 8.) Defendants note that Dr. Campbell has confirmed that pain management treatment is "pretty common" for people with fibromyalgia, and that a person does not have to suffer trauma to have neck pain and qualify for the treatment he provided to Plaintiff. (Doc. 62 at 8; DSOF ¶¶15-17.) Thus, Defendants argue that the evidence is insufficient for Plaintiff to prove causation and, therefore, "summary judgment should be entered in Defendants favor as to all medical care received by Plaintiff after February 1, 2016." (Doc. 62 at 8.)

In response, Plaintiff asserts that the "majority" of medical records she disclosed to Defendants "refer to the . . . May 13, 2015 [accident] as the date of the onset of symptom." (Doc. 65 at 3.) To support that assertion, Plaintiff attached "a collection of exemplars of the records" that allegedly "establish causation." (*Id*.; Doc. 65, Exs. 1-A to 1-E; Doc. 65-1 at 2-29.) These records are for treatment in 2015, with the exception of a single note for treatment on October 7, 2016. (Doc. 65, Exs. A-E.)

However, whether Plaintiff's alleged injuries are "casually connected to the accident and the extent and duration of those injuries is a matter for jury determination." *Ball,* 781 P.2d at 630 (although plaintiff had not sought any treatment in connection to his claimed injuries, whether his claimed injuries were causally connected to the accident was a jury question and the trial court erred in granting summary judgment on plaintiff's claim for punitive damages); *see Ontiveros*, 667 P.2d at 208 (the issue of causation "should ordinarily be a question of fact for the jury under usual principles of Arizona tort law").

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's claims for damages for medical treatment provided after February 1, 2016, to the extent that treatment has been disclosed in medical records. However, Plaintiff has not disclosed any expert opinion evidence to establish that her injuries are permanent, or that she will require future care. Plaintiff does not claim that she has the training, education, or experience to offer these medical opinions. *See* Fed. R. Evid. 701, 702. Therefore, without expert opinion evidence on these issues, Plaintiff's claim for future medical treatment fails as a matter of law. Therefore, the Court grants Defendants' motion to the extent it seeks summary judgment on Plaintiff's claim for future medical treatment.

### 2. Lost Wages and Loss of Earning Capacity

Defendants assert that Plaintiff seeks damages in the form of "future lost wages" and lost earning capacity because she retired four years early due to pain in her neck, back and shoulders that was caused by the accident. (Doc. 62 at 1; DSOF ¶ 18.)[6] Defendants move for summary judgment on these damages because Plaintiff has not disclosed any expert opinion evidence supporting this claim for damages. (Doc. 62 at 8.)

In a personal injury action, "Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and

---

[6] This assertion is based on Plaintiff's response to an interrogatory stating that Plaintiff can no longer drive a tractor trailer due to her pain and that her "ability to work has been cut short by this accident." (DSOF ¶ 18; Doc. 65 at 53, lines 27-28.)

suffering, lost earnings, and diminished earning capacity." *Wendelken v. Superior Court in and for Pima County*, 671 P.2d 896, 899 (Ariz. 1983). "Thus, in a personal injury action, there is recovery for a decrease in earning capacity as distinct from lost wages." *Mandelbaum v. Knutson*, 462 P.2d 841, 842 (Ariz. 1969). "[I]mpairment of earning capacity is an item of general damage, permitting recovery for loss or diminution of the power to earn in the future and is based upon such factors as plaintiff's age, life expectancy, health, habits, occupation, talents, skills, experience, training and industry." *Id.* at 842-43. "To sustain such an award, the injured person must establish the fact of diminished capacity and the fact that it is permanent." *Id.* at 842. "Once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery." *Lewis*, 825 P.2d at 18. Doubt about the extent of an injury should be resolved in favor of plaintiff. *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963). However, "the plaintiff's evidence [must] provide some basis for estimating his loss." *Id.*

Defendants move for summary judgment of Plaintiff's claims for lost wages and for lost earning capacity. (Doc. 62 at 1.) Defendants argue that to recover damages for past or future income loss resulting from her early retirement, Plaintiff must prove that the accident was the proximate cause of her pain that forced her to retire early. (Doc. 62 at 9.) Defendants assert that these claims are undermined because Plaintiff returned to work three months after the accident (*Id.*) Defendants also argue that Plaintiff is not entitled to damages for lost earning capacity because she has not presented any expert opinion evidence that her injuries are permanent. (Doc. 62.)

Defendants do not argue that Plaintiff is not entitled to any damages for lost wages. Rather, they seek an order stating that Plaintiff cannot recover "economic damages" based on her early retirement because she cannot show causation. (*Id.* at 8.) As set forth above, Plaintiff has not disclosed any expert opinion evidence to establish the degree of any impairment or that her injuries are permanent. Therefore, she cannot establish her claim for lost earning capacity. *See Mandelbaum,* 462 P.2d at 842. The Court grants Defendants' motion to the extent it seeks summary judgment on Plaintiff's

- 13 -

1 | claim for lost or impaired earning capacity. However, Plaintiff may testify about her injuries and pain, and how her pain affected her ability to work from immediately after the accident to the present. However, Plaintiff may not testify about whether her injuries are permanent or how her injuries may affect her future ability to work. Therefore, the Court grants Defendants' motion to the extent it seeks summary judgment on Plaintiff's claim for lost future income.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 62) is **GRANTED** on Plaintiff's claim for future medical treatment, lost earning capacity, and lost future income and is **DENIED** in all other respects.

Dated this 21st day of November, 2018.

_____
Bridget S. Bade
United States Magistrate Judge